310 Ga. 114
FINAL COPY

S19G1095.  MENDEZ v. MOATS et al.

Order.

After careful consideration of the full record and the briefs of the parties, the Court has determined that the writ of certiorari issued in Case No. S19G1095 was improvidently granted. Accordingly, the writ is vacated, and the petition for certiorari in Case No. S19C1095 is denied.

*All the Justices concur, except Melton, C. J., who dissents, and McMillian, J., disqualified.*

NAHMIAS, Presiding Justice, concurring.

Our Court granted a writ of certiorari in this case to address two important questions presented by the divided opinion of the Court of Appeals in *Moats v. Mendez*, 349 Ga. App. 811 (824 SE2d 808) (2019), regarding the interpretation of OCGA § 36-11-1, which says in pertinent part that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or

the same are barred":

> (1) Does OCGA § 36-11-1 apply to official-capacity claims against a county sheriff for negligent use of a covered motor vehicle?

> (2) If so, does the proper presentment of such claims to the county commission satisfy the claimant's duty under the statute?

Having now received the full record, and after review of the parties' briefs and oral arguments, the Court has determined that the writ of certiorari was improvidently granted, so it vacates the writ and denies Efrain Mendez's petition for certiorari. I concur in that decision — although as I explain below, I do so with some reluctance — because the questions we asked should be addressed in a case that more properly presents them.

The record shows that Mendez did not argue in the trial court or the Court of Appeals (until some passing references in his motion for reconsideration) that OCGA § 36-11-1 does not apply to official-capacity claims against sheriffs, and in his brief here, he embraces the Court of Appeals' holding that the presentment statute does apply. Although I have doubts about that holding, as I discuss below,

2

we should not decide this difficult question in a case where it has not been properly raised by the petitioner or adequately briefed.

*Assuming* that OCGA § 36-11-1 does apply to official-capacity claims against sheriffs, I think it is clear that the Court of Appeals decided the second question we asked incorrectly. As I explain below, it makes no sense legally or logically to hold on the one hand that sheriffs equal counties to make § 36-11-1 apply to claims against sheriffs, while holding on the other hand that counties do not equal sheriffs with regard to the presentment requirement of the statute. But I understand the Court's reticence to make that prerequisite assumption; we should decide the second question only if we agreed with the Court of Appeals as to the first question, and again, the first question is not well-presented by this case. Accordingly, the Court will need to await a case that appropriately presents these important questions.

1. The Court of Appeals summarized the pertinent facts of this case as follows.

> On August 15, 2015, Mendez was driving his vehicle

toward the intersection of South Main Street and Case Road in Cedartown, Georgia. As Mendez's vehicle entered the intersection, Deputy [Sheriff Kathryn] Allred — who was on-duty and driving a county-owned patrol vehicle — approached the intersection from the opposite direction and attempted to make a left-hand turn without yielding to oncoming traffic. As a result, her patrol vehicle collided with Mendez's vehicle, and Mendez suffered injuries.

On January 21, 2016, Mendez's counsel sent an ante-litem notice, via certified mail, to Polk County, informing the chairman of its Board of Commissioners of Mendez's claims against Allred; but counsel did not send an ante-litem notice to [Polk County] Sheriff [Johnny] Moats. Subsequently, on August 9, 2017, Mendez filed a lawsuit against Moats and Allred, alleging that he suffered injuries in an automobile accident caused by Allred's negligent driving of a county-owned patrol vehicle and that Moats was vicariously liable for his employee's negligence. Shortly thereafter, Mendez served his complaint upon Moats and Allred.

On September 9, 2017, Moats and Allred filed separate answers. And on that same date, they filed a consolidated motion to dismiss, arguing that (1) Mendez's claims against Allred were barred by OCGA § 36-92-3 (a), and (2) Mendez's failure to send an ante-litem notice to Moats or the Polk County Sheriff's Office barred any claim against Moats or Allred. Mendez filed a response to the motion, and several rounds of reply briefing ensued. On March 16, 2018, the trial court denied the motion to dismiss, but, ten days later, it granted Moats and Allred a certificate of immediate review. The defendants then filed an application for interlocutory appeal, which [the Court of Appeals] granted.

*Moats,* 349 Ga. App. at 812 (footnote omitted).

4

In its subsequent whole-court opinion, the Court of Appeals reversed the trial court's judgment. The Court of Appeals first held unanimously in Division 1 that Mendez's claims against Deputy Sheriff Allred were barred by OCGA § 36-92-3 (a), which grants immunity to a "local government officer or employee who commits a tort involving the use of a covered motor vehicle while in the performance of his or her official duties." See *Moats*, 349 Ga. App. at 813-814. Mendez did not seek review of this holding in his petition for certiorari.

The Court of Appeals divided, however, as to Division 2. The majority held that Mendez's claims against Sheriff Moats were also barred, because Mendez failed to properly present his claims as required by OCGA § 36-11-1, which says in full:

> All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims.[1]

---

[1] In this and other cases, the Court of Appeals has referred to OCGA § 36-11-1 as requiring "ante-litem notice." *Moats*, 349 Ga. at 811-817. OCGA § 36-11-1's mandate is properly termed "presentment," because a plaintiff may

Mendez argued that the presentment of his claims to Polk County through the chairman of its Board of Commissioners sufficiently presented the claims against Sheriff Moats. See *Moats*, 349 Ga. App. at 814-815. The majority opinion, however, rejected that argument.

The majority first held succinctly that "'OCGA § 36-11-1 applies both to the counties and to the sheriffs, when sued in their official capacities.'" *Moats*, 349 Ga. App. at 815 (quoting *Davis v. Morrison*, 344 Ga. App. 527, 532 (810 SE2d 649) (2018), and citing *Columbia County v. Branton*, 304 Ga. App. 149, 151 (695 SE2d 674) (2010), overruled on other grounds by *Harrison v. McAfee*, 338 Ga. App. 393 (788 SE2d 872) (2016)).

The majority then noted that "OCGA § 36-11-1 fails to specify

satisfy the statute either by providing pre-litigation (ante-litem) notice of his claim or by filing and serving his complaint within the 12-month time limit. See *Dement v. DeKalb County*, 97 Ga. 733, 733 (25 SE 382) (1895) ("[The predecessor to OCGA § 36-11-1] does not provide in what form the claim shall be presented, nor does it warrant the construction that a formal presentation of the claim shall be a condition precedent to the bringing of the suit. It is enough, we think, if the claim be presented in the shape of an action. Indeed, at last, [the statute] is only a statute of limitations."); *Burton v. DeKalb County*, 202 Ga. App. 676, 677 (415 SE2d 647) (1992) ("[OCGA § 36-11-1] is not truly an ante litem notice statute because if a complaint is filed and properly served within the 12-month time limit, the requirements of the statute are met.").

to whom presentment must be made"; discussed various Georgia constitutional provisions and case law that "treat[ ] the county and sheriff as separate and distinct entities"; and reasoned that sheriffs, rather than counties, are vicariously liable for the negligence of their deputies, so Mendez would be "legally precluded from even naming [the] county as a proper defendant." *Moats*, 349 Ga. App. at 815-817. Concluding that Mendez's presentment of his claims to the county rather than the sheriff's office was "entirely ineffectual," the majority opinion held that his claims against Sheriff Moats were barred under OCGA § 36-11-1. *Moats*, 349 Ga. App. at 817-818.

In a brief concurrence, Judge Mercier, joined by six other judges, agreed fully with the majority but wrote to emphasize that a unanimous panel of the court just 13 months earlier had decided *Davis*, which "explicitly determined" that a sheriff sued in his official capacity must be presented with a plaintiff's claims in accordance with OCGA § 36-11-1. *Moats*, 349 Ga. App. at 818. The concurrence said that "[a]lthough the dissent's arguments are appealing and not unreasonable, the majority's analysis and the clear precedent

7

established in *Davis* are sound," and considering the doctrine of stare decisis, there is "no reason to revisit *Davis*'s clear holding." *Moats*, 349 Ga. App. at 818.

Presiding Judge Doyle, joined by three other judges, dissented as to Division 2. See *Moats*, 349 Ga. App. at 819-823. The dissent argued first that *Branton*, upon which *Davis* relied, did not actually address whether presentment to the county, rather than the sheriff, is sufficient under OCGA § 36-11-1, and that "*Davis* improperly extended *Branton*" and should be overruled. *Moats*, 349 Ga. App. at 820, 823. Noting that the sheriff, not the county, is the proper defendant in a lawsuit alleging respondeat superior claims for a deputy sheriff's negligence, the dissent questioned whether OCGA § 36-11-1 even applies to lawsuits against sheriffs. See *Moats*, 349 Ga. App. at 820-821. The dissent acknowledged, however, that this Court in a footnote in *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994), concluded that lawsuits against a sheriff in his official capacity "'are, in essence, claims against (the county).'" *Moats*, 349 Ga. App. at 821 (quoting *Gilbert*, 264 Ga. at 746 n.4). The dissent

8

then reasoned that if these types of lawsuit are treated as "claims against counties" for the purposes of OCGA § 36-11-1, "presentment *to the county* should suffice." *Moats*, 349 Ga. App. at 821 (emphasis in original).

Mendez filed a petition for certiorari, focusing on whether OCGA § 36-11-1 requires presentment of a claim against a sheriff in his official capacity to the sheriff rather than the county. He did not directly challenge the holding that OCGA § 36-11-1 applies to such claims, although Sheriff Moats defended that holding in his response to the petition and an amicus curiae brief from the Georgia Trial Lawyers Association disputed that holding. Because the question of whether OCGA § 36-11-1 applies to this case is logically antecedent to the question of whether presentment was properly made under that statute, when this Court granted the petition for certiorari, we asked the parties to address both questions.

2. As I indicated above, the full record shows that Mendez did not squarely argue below that OCGA § 36-11-1 does not apply to official-capacity claims against county sheriffs for the negligence of

their deputies, and despite our teeing up that issue in the first question we asked, in his brief and at oral argument in this Court, Mendez has not disputed and indeed embraces the Court of Appeals' holdings in this and previous cases that OCGA § 36-11-1 does apply to such claims. As I will explain, I have doubts about those holdings — or, more precisely, doubts about this Court's statements on which those Court of Appeals' decisions rest — but this issue is complicated and may require consideration of stare decisis factors, and we should not try to answer the question conclusively without the assistance of robust briefing on the issue, which we unfortunately lack in this case.

(a) "The statutory presentment requirement of OCGA § 36-11-1 has been a part of our law for more than 150 years." *Croy v. Whitfield County*, 301 Ga. 380, 381 (801 SE2d 892) (2017). There have been lawsuits alleging that sheriffs are responsible for the negligent acts of their deputies for even longer than that. See, e.g., *Holley v. Wallace*, 10 Ga. 158, 158 (1851). See also *Robinson v. Bealle*, 20 Ga. 275, 306 (1856) (explaining that "[a]ny act of

10

negligence in the Deputy Sheriff, is an act of negligence in the Sheriff"). Yet until the Court of Appeals decided *Branton* in 2010, it appears that no case ever held that OCGA § 36-11-1's presentment requirement for "claims against counties" applies to official-capacity claims against a sheriff for the alleged negligence of one of his deputies.

*Branton* involved a lawsuit against a county and its sheriff in his official capacity for fatal injuries allegedly caused by his deputy during a car chase; the defendants moved for summary judgment on the ground that the plaintiff presented his claims more than 12 months after they had accrued, but the trial court denied the motion, ruling that the time for presenting the claims under OCGA § 36-11-1 had been tolled. See *Branton*, 304 Ga. App. at 149-151. The Court of Appeals' analysis focused almost entirely on whether the 12-month presentment period had been tolled; the court ultimately concluded that it had not. See id. at 151-154.[2]

---

[2] *Branton*'s holding about how OCGA § 9-3-99 tolls a statute of limitation has since been overruled. See *Harrison*, 338 Ga. App. at 402.

Near the outset of the opinion, however, the Court of Appeals declared that OCGA § 36-11-1 "applies both to Columbia County and to Sheriff Whittle, who was sued in his official capacity only." *Branton*, 304 Ga. App. at 151. In a footnote, the court noted that the plaintiff had not argued that § 36-11-1 does not apply to sheriffs until a response to a supplemental brief, and rejected that argument by saying that the official-capacity claims against the sheriff were "tantamount to a suit against the county." Id. at 151 n.2. For that proposition, *Branton* cited cases that trace back to our Court's decision in *Gilbert*. In *Davis* and in this case, the Court of Appeals issued the same holding relying on *Branton* and cases that trace back to *Gilbert*. See *Moats*, 349 Ga. App. at 813 & n.6, 815 & n.14; *Davis*, 344 Ga. App. at 532 & n.19.

(b) *Gilbert* was one of this Court's first major cases interpreting the 1991 amendment to the Georgia Constitution of 1983 that instituted a somewhat new framework for sovereign and official immunity. See 264 Ga. at 746. See generally Ga. Const. of 1983, Art. I, Sec. II, Par. IX; *Lathrop v. Deal*, 301 Ga. 408, 411-423 (801 SE2d

867) (2017) (reviewing the history of sovereign immunity in Georgia courts). The case involved negligence claims against a deputy sheriff and a sheriff, who was sued in his official capacity for the alleged negligence of the deputy. See *Gilbert*, 264 Ga. at 745. The Court held that counties come within the term "the state and its departments and agencies" in the new Article I paragraph, so that counties have sovereign immunity and the General Assembly can waive that sovereign immunity only as authorized by the new provision. See id. at 747-748.[3]

But the plaintiffs had not sued the sheriff's *county*. So the Court dropped a footnote saying that because the sheriff was sued in his official capacity as the county's sheriff, the claims against him were "in essence, claims against [the county]," and the sheriff could "raise any defense available to the county, including sovereign

---

[3] I and other Justices have previously expressed doubt about this holding, particularly because Article IX, Section II, Paragraph IX of the Constitution speaks directly to the "immunity of counties" and its waiver by the General Assembly. See *Wyno v. Lowndes County*, 305 Ga. 523, 533-534 (824 SE2d 297) (2019) (Nahmias, P. J., concurring, joined by Blackwell, Boggs, and Peterson, JJ.).

immunity." Id. at 746 n.4. The Court proceeded to hold, however, that even though the sheriff was "entitled to the benefit of [the county's] sovereign immunity defense," that immunity was waived by OCGA § 33-24-51 (b) to the extent that the county had liability insurance coverage. *Gilbert*, 264 Ga. at 751-752, 754.[4] Thus, the effect of the footnote in *Gilbert* was to proclaim that the sheriff could assert the county's sovereign immunity defense, only for the Court to then find that defense waived based on the county's purchase of insurance; the Court might have just as well merely assumed that the sheriff was entitled to assert the county's sovereign immunity.

Problematically, none of the four cases that *Gilbert* cited for the proposition that official-capacity claims against a sheriff are essentially claims against a county involved claims against sheriffs. See *Price v. Dept. of Transp.*, 257 Ga. 535, 536-537 (361 SE2d 146)

---

[4] OCGA § 33-24-51 establishes among other things that a county, municipal corporation, or other political subdivision of the state may secure and provide insurance and that the sovereign immunity of such local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived under OCGA § 36-92-2 to the extent of the amount of insurance purchased.

(1987) (concluding that the state's sovereign immunity under the 1983 Constitution extended to the acts of state Department of Transportation employees in their official capacity); *Hennessy v. Webb*, 245 Ga. 329, 329-332 (264 SE2d 878) (1980) (holding that a school principal was entitled to governmental immunity under the common law for official-capacity negligence claims); *Hiers v. City of Barwick*, 262 Ga. 129, 129, 132 (414 SE2d 647) (1992) (noting that a city and its chief of police raised the defense of sovereign immunity and holding that the city's purchase of liability insurance constituted a waiver of sovereign immunity under the 1983 Constitution); *Roberts v. Barwick*, 187 Ga. 691, 695-696 (1 SE2d 713) (1939) (holding that a lawsuit against the state commissioner of agriculture was barred by the state's common-law sovereign immunity). Likewise, when a few pages later *Gilbert* said (in language that came to be quoted in the cases upon which *Branton* relied) that "'suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity,'" the Court again was quoting a case

15

involving the attribution of official acts by state employees to the state, not by a sheriff's deputy to a county. *Gilbert*, 264 Ga. at 750 (quoting *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 56 (414 SE2d 638) (1992) (Hunt, J., concurring)).[5]

In addition, the Court did not acknowledge in *Gilbert* that although sheriffs are "county officers," see Ga. Const. of 1983, Art. IX, Sec. I, Par. III, they are distinct from and independent of counties in many ways. Sheriffs are elected constitutional officers, not employees of county commissions, and indeed their duties "are beyond the control of county governing bodies, and those bodies may not interfere with such duties." *Channell v. Houston*, 287 Ga. 682, 684 (699 SE2d 308) (2010). See also *Bd. of Commrs. of Randolph County v. Wilson*, 260 Ga. 482, 482-483 (396 SE2d 903) (1990) (explaining that the county has the general authority to set the sheriff's budget but may not direct the hiring or firing of the sheriff's deputies). Furthermore, although *Gilbert* said in footnote 4 that

---

[5] Indeed, there appear to be no cases applying common-law sovereign immunity to lawsuits against sheriffs or their deputies.

official-capacity claims against sheriffs "are, in essence, claims against [the county]," later in the opinion the Court held that sheriffs, not counties, are liable in their official capacities for respondeat superior claims alleging negligence against their deputies. See *Gilbert*, 264 Ga. at 754. For these reasons, *Gilbert's* equation of official-capacity claims against sheriffs and claims against counties seems questionable.

In identifying these concerns about *Gilbert* as an original matter, however, I have not had the benefit of robust briefing that might allay some or all of the concerns. Moreover, an edifice of precedents and practices has been built on *Gilbert* over the past quarter-century, so even if the Court determined that *Gilbert's* reasoning was flawed, consideration of stare decisis might weigh in favor of upholding it. See generally *Frett v. State Farm Employee Workers' Comp.*, 309 Ga. 44, 51-65 (844 SE2d 749) (2020) (discussing the doctrine of stare decisis and applying it in detail, over a dissent by Justice Peterson regarding its application). That issue also has not been adequately briefed.

If we ultimately adhered to *Gilbert*, the holding of the Court of Appeals' majority that OCGA § 36-11-1 applies to official-capacity claims against a county sheriff for the negligent use of a covered motor vehicle — that court's answer to the first question we asked — is likely correct. Because Mendez is not disputing that holding, this is not the right case to address it, but for the reasons I have outlined, the question may well merit review in a future case where it is better presented and briefed.[6]

---

[6] In his brief here, Mendez seeks to rely on the statement in *Gilbert*'s footnote 4 that a sheriff sued in his official capacity "may raise any defense available to the county" to argue that Sheriff Moats cannot assert OCGA § 36-11-1 as a defense. Mendez points to the last sentence of OCGA § 33-24-51 (b), which says, with emphasis added:

> Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense [to claims for the negligent use of a covered motor vehicle where the government has purchased liability insurance]; and the municipal corporation, county, or political subdivision of this state or the insuring company may make *only those defenses which could be made if the insured were a private person.*

Mendez argues that this provision precludes Sheriff Moats from asserting that Mendez's claims are barred by OCGA § 36-11-1, because a *private person* could not assert that presentment defense. The Court of Appeals once rejected that argument in a case involving a claim against a county, saying only that "the trial court found that OCGA § 33-24-51 (b) is expressly limited to defenses relating to sovereign immunity" and thus "does not implicate the 12-month presentation requirement under OCGA § 36-11-1," *Warnell v. Unified Govt. of*

18

3. It would be good if a case properly presenting the first question came before this Court, because if we decided that the Court of Appeals' holdings that treat claims against sheriffs as the *equivalent* of claims against counties under OCGA § 36-11-1 are right, it is clear to me that the Court of Appeals' holdings treating sheriffs as entirely *distinct* from counties with regard to the presentment of such claims are wrong — and it appears that the Court of Appeals is not inclined to correct its erroneous precedent, leaving that task to this Court (or the General Assembly). Simply put, presentment to the county governing authority of a claim to which OCGA § 36-11-1 applies satisfies the statute's presentment requirement.

(a) Until the Court of Appeals decided *Davis* two years ago, it appears that no case in the more than 150 years since the enactment of the statute that is now OCGA § 36-11-1 held that presentment of

---

*Athens-Clarke County*, 328 Ga. App. 903, 905 (763 SE2d 284) (2014). That reading of § 33-24-51 (b) looks dubious at first glance, but Mendez did not raise the argument in the Court of Appeals, that court did not address the argument in its opinion, and we did not grant certiorari to address that issue, so it too will need to be properly presented in a future case.

a plaintiff's claim to the county governing authority was insufficient to satisfy the statute. Although the statute does not specify to whom presentment must be made, our appellate courts have consistently construed OCGA § 36-11-1 and its predecessors to require presentment of claims to the county governing authority. See *Croy*, 301 Ga. at 381 ("More than 100 years ago, this Court held that . . . the presentment is properly directed to the governing authority of the county."). This Court and the Court of Appeals have held that presentment of claims to the county governing authority may sometimes be done indirectly, by presenting the claims to subordinate officers of the county government like the county attorney or finance department insurance manager. See id. at 382-383. But before *Davis*, it appears that no Georgia court had ever held that the presentment of claims to the county governing authority itself was inadequate to satisfy OCGA § 36-11-1, or that presentment to an entity other than the county governing authority was required.

*Davis's* holding that OCGA § 36-11-1 requires a plaintiff to

present his official-capacity claims against a sheriff to the sheriff instead of the county governing authority was based on, well, nothing. Less than 12 months after Davis was injured in an auto accident allegedly caused by a sheriff's deputy, he presented his claims to the county. See 344 Ga. App. at 528. In response to Davis's argument that his presentment of his claims to the county governing officials was sufficient under OCGA § 36-11-1, the Court of Appeals cited *Branton* for the propositions that "OCGA § 36-11-1 applies both to the counties and to the sheriffs, when sued in their official capacities" and that "we have held that claims against a sheriff are not sustainable without the ante-litem notice." Id. at 532. Fair enough; that is what *Branton* held. But the court then concluded, "[a]ccordingly," that Davis had not satisfied the presentment requirement. Id.

In fact, *Branton* said nothing about *to whom* presentment of official-capacity claims against a sheriff must be made, and it certainly did not hold that OCGA § 36-11-1 requires presentment of such claims to the sheriff rather than the county governing

21

authority. That was not an issue in *Branton*, because the plaintiff there had not presented his claims to *anyone* within the 12-month period under OCGA § 36-11-1. See *Branton*, 304 Ga. App. at 151-152.[7] So there was no "[a]ccording[ ]" to *Branton*; *Davis*'s holding that presentment must be made to the sheriff was instead an ipse dixit — an assertion unsupported by authority.

When the Court of Appeals' dissent in this case pointed out that *Branton* did not support the holding in *Davis*, the majority opinion tried to salvage the holding by asserting that "the Georgia Constitution and our well-established case law treat[ ] the county and sheriff as separate and distinct entities." *Moats*, 349 Ga. App. at 815. The majority then discussed in detail various authorities

---

[7] If anything, *Branton* suggests that presentation to the county would be appropriate. As noted above, the focus of the opinion in *Branton* was whether OCGA § 36-11-1's 12-month deadline for what the court called "ante litem notice" was tolled, and the only (delayed) notice that the plaintiff had provided was to the county, not the sheriff. See 304 Ga. App. at 151. Moreover, for the proposition that "the claims against Sheriff Whittle are not sustainable without the ante litem notice," the court cited a case involving the municipal ante-litem notice statute, in which the issue was failure to provide notice of an official-capacity suit against a police officer to the *city*, not to the officer. See id. at 151 n.2 (citing *Conley v. Dawson*, 257 Ga. App. 665, 667 (572 SE2d 34) (2002)).

that treat sheriffs and counties as disparate entities and indeed prohibit plaintiffs "from even naming a county as a proper defendant" in cases such as this one, because only the sheriff, not the county, is vicariously liable for the negligent acts of his deputies. Id. at 816-818.[8]

---

[8] This last statement by the majority, while amply supported by Court of Appeals' precedent, creates significant confusion when read in conjunction with OCGA §§ 36-92-1 to 36-92-5, which regulate claims (like Mendez's claim) for the negligent use of a "covered motor vehicle" (a vehicle owned, leased, or rented by a "local government entity"). OCGA § 36-92-2 waives "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle[,]" up to certain limits; in turn, OCGA § 36-92-3 (a) provides immunity from liability to "[a]ny local government officer or employee who commits a tort involving the use of a covered motor vehicle while in the performance of his or her official duties[.]" Indeed, § 36-92-3 (b) prohibits naming "the local government officer or employee individually" as a party defendant; the defendant must be "the local government entity for which the officer or employee was acting[,]" and if the plaintiff instead names the officer or employee, the entity will be substituted as the defendant.

When *Davis* and *Moats* were decided, "local government entity" was defined as "any county, municipal corporation, or consolidated city-county government of this state[,]" and "local government officer or employee" was defined as "[a]n officer, agent, servant, attorney, or employee of a local government entity." Former OCGA § 36-92-1 (3), (4). In *Davis*, the Court of Appeals – relying on this Court's statements equating sheriffs and counties in *Gilbert* – interpreted former § 36-92-1 (3)'s definition of "local government entity" to include sheriff's offices, even though they were not expressly defined as such, and held that the plaintiff's negligence claims against the sheriff's deputy in that case were barred by § 36-92-3 (a) because the deputy thus qualified as a "local government officer or employee." See *Davis*, 344 Ga.

23

The problem with this reasoning, as suggested in my discussion of the first certiorari question above, is that if sheriffs are really that distinct from counties, then claims against sheriffs cannot be "claims against counties" within the plain text of OCGA § 36-11-1, and the statute would not apply at all in this case. As a matter of law and logic — as well as fairness to litigants and their lawyers trying to figure out how to preserve their injury claims — it cannot be both ways: sheriffs cannot equal counties so the statute

---

App. at 530-531. The Court of Appeals followed that holding in Division 1 of its opinion in this case. See *Moats*, 349 Ga. App. at 813-814.

In May 2019, shortly after the decision in *Moats*, the General Assembly amended OCGA § 36-92-1 (4) to expressly include "[a] sheriff, deputy sheriff, or other agent, servant, or employee of a sheriff's office" in the definition of "local government officer or employee." See Ga. L. 2019, p. 781, § 1 (codified as OCGA § 36-92-1 (4) (B)). The definition of "local government entity" was not amended, however, although the preamble to the 2019 amendment asserted that "a sheriff's office shall be considered a local government entity." Id. So it is textually clear now that a "sheriff" is *not* a "local government entity," although perhaps his "office" is under the guise of the "county." In any event, going forward, it appears that a plaintiff injured by a sheriff's deputy negligently using a covered motor vehicle is *statutorily prohibited* from suing the deputy or the sheriff; the plaintiff may sue only the pertinent local government entity (which the statute says is the "county," although the preamble suggests might be called the "sheriff's office"). Asking such a plaintiff to understand that he must comply with OCGA § 36-11-1 by presenting his claim to the sheriff (whom he cannot sue) rather than the county (which the statute directs him to sue) is asking a lot.

24

applies, but be different than counties when a plaintiff tries to comply with the statute. See *Moats*, 349 Ga. App. at 823 (Doyle, P. J., dissenting in part) ("[I]f this should be considered a suit against the sheriff in a more narrow sense (and not a suit against the county), then the county presentment statute should not apply at all."). There is no justification for holding, contrary to more than a century of precedent, that presentment of "claims against counties" covered by OCGA § 36-11-1 to the county governing authority is insufficient to comply with the statute.[9]

---

[9] Georgia courts have sometimes looked to the purposes of OCGA § 36-11-1 to determine whether presentment of claims against counties to someone *other* than the county governing authority was sufficient. See, e.g., *Croy*, 301 Ga. at 385. The parties debate the best policy here. On the one hand, the county owned the covered motor vehicle involved in the accident at issue and purchased the insurance for it, and it appears that the county ultimately would be responsible for a judgment against the sheriff in his official capacity. On the other hand, the sheriff has considerable autonomy, including over his personnel and records, which could be important in investigating the claim. These factors could conceivably justify a holding that presentment of the sort of claim at issue here to the sheriff (like the presentment of the claims to the county attorney in *Croy*) is sufficient to present the claims to the county governing authority (although the Court of Appeals majority opinion expressly rejected that approach, see *Moats*, 349 Ga. App. at 815-816 n.19). But never has such a policy evaluation led to the conclusion that presentment to the county governing authority is *not* sufficient. See *Croy*, 301 Ga. at 385 ("Because OCGA § 36-11-1 says nothing about the means by which a presentment *properly is to be submitted to the governing authority of a county*, the courts for

25

Unfortunately, as I have explained above, this case is not well-presented to allow the Court to reach the second question we asked, so that we could overrule *Davis's* unsupported and errant holding. Fixing *Davis* must be left to a future case that comes before this Court, unless the Court of Appeals reconsiders its precedent in light of this opinion.[10] Better yet, the General Assembly could step in to amend OCGA § 36-11-1 to provide some useful textual clarity as to whether the statute applies to official-capacity claims against

---

many years have looked to the purpose of the statute in assessing the sufficiency of the manner of presentment." (emphasis added)).

[10] Judge Mercier's concurring opinion (joined by six other judges) asserted that *Davis's* holding should be followed as a matter of stare decisis because "the majority's analysis and the clear precedent established in *Davis* are sound." *Moats*, 349 Ga. App. at 818. I have explained why *Davis's* holding was in fact just an ipse dixit and that it fares no better under the majority opinion's reasoning, and the other stare decisis factors do not weigh in favor of retaining *Davis*: its holding is still barely two years old; it has not been entrenched in a long series of decisions or otherwise meaningfully relied on; and while perhaps workable for those who understand it, it lays a trap for unwary plaintiffs who miss this singular deviation from the otherwise unbroken rule that "claims against counties" may be presented to the county governing authority under OCGA § 36-11-1. See *Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 678 (821 SE2d 22) (2018) ("To decide whether a precedent ought to be set aside, we consider the soundness of its reasoning, to be sure — it is, we have said, the most important factor — but we also consider the age of the precedent, the reliance interests involved, (and) the workability of the prior decision." (citation and punctuation omitted)). So perhaps there is hope that the Court of Appeals will rectify its mistake when the occasion arises.

26

sheriffs and, if so, to whom such claims must be presented. See *Moats*, 349 Ga. App. at 821 n.48 (Doyle, P. J., dissenting in part).[11]

For these reasons, I concur, reluctantly, in the Court's decision to dismiss the writ of certiorari as improvidently granted.

I am authorized to state that Justice Bethel joins in this concurrence.

BETHEL, Justice, concurring.

If a Georgia citizen was injured by the negligent operation of a county-owned vehicle by a deputy Sheriff and bothered to look up the statutory provisions applicable to gaining compensation for any resultant injury, only sheer accident would result in that citizen successfully obtaining relief — even though it is most likely available. Through a series of actions by the General Assembly to amend our Code provisions regarding such claims, and our appellate courts' attempts to elucidate and harmonize them, we find ourselves

---

[11] If the General Assembly clarifies OCGA § 36-11-1, it should also make that statute consistent with the text of OCGA §§ 36-92-1 to 36-92-5. See footnote 8 above.

27

with a system where "county" sometimes means county or sheriff (and, in at least one iteration, county *and* sheriff) and "notice" often means *notices*. Further, while a Sheriff is a constitutional officer and an autonomous and independent unit of local government, the board of commissioners for his or her county can waive that autonomy for certain claims via the purchase of automobile insurance. Of course, only some of this is apparent in the actual text of our Code.

Something ought to be done, but I am afraid this Court is ill-fitted to do it. As the world now sits, attorneys who practice in this area or who take the time to read the case law connected to what, on its face, looks like it would not need much interpretation, have a clear "guidebook" for how to procedurally protect their clients' claim. Were we to wade in, I suspect the doctrine of stare decisis would favor our leaving at least some wrongly decided cases in place because local governments have relied on them in structuring their risk management strategies and investments. And that would leave us unable to get back to the plain language of the statutes in question. More importantly, I believe our treading into this mess

(partly of our making) would not be consistent with the first law of our siblings in the medical arts — first, do no harm.

Thus, although I have serious misgivings that the result reached by the Court of Appeals in *Moats v. Mendez*, 349 Ga. App. 811, 814-818 (2) (824 SE2d 808) (2019), ultimately reflects a correct reading of Georgia law, specifically the requirements of OCGA § 36-11-1, I join in the decision of this Court allowing that judgment to stand and concur in the dismissal of our granted writ of certiorari.

Given our action today in allowing the Court of Appeals' fractured opinion in this case to stand, it appears that for the foreseeable future, we are unlikely to see any further action from our appellate courts to clarify the issues presented by this case. While I agree with the sentiment and analysis expressed by the Presiding Justice that some future case may provide an appropriate vehicle for this Court to address the important questions posed in our grant of certiorari in this case, I am not particularly hopeful that the perfect case will arise nor that considerations of stare decisis will result in a clean resolution. Thus, I agree with the dissenters below

29

that the ante litem statute "is a good candidate for clarification by the General Assembly." *Moats*, 349 Ga. App. at 821 n.48 (Doyle, P. J., dissenting).

DECIDED SEPTEMBER 28, 2020 —
RECONSIDERATION DENIED OCTOBER 19, 2020.
Certiorari to the Court of Appeals of Georgia — 349 Ga. App. 811.

*Walter W. Furlong*, for appellant.

*Womack, Gottleib & Rodham, Ronald R. Womack, Steven M. Rodham, Ryan L. Ray*, for appellees.

*Charles M. Cork III; Walker Hulbert Gray & Moore, Kellye C. Moore, Julian K. McLendon III*, amici curiae.